# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

**April 30, 1999**

Williamson Chancery No. 24827

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

BRUCE FREEMAN GROVER, JR.,   )
   )
      Plaintiff/Appellee-   )
      Cross/Appellant,   )
   )
v.   )
   )   Appeal No. 01A01-9804-CH-00197
SHARON DIANE GROVER,   )
   )
      Defendant/Appellant-   )
      Cross/Appellee.   )

## APPEAL FROM THE CHANCERY COURT OF WILLIAMSON COUNTY
### AT FRANKLIN, TENNESSEE

## THE HONORABLE TIMOTHY EASTER, JUDGE

For the Plaintiff/Appellee-
Cross/Appellant:

Russ Heldman
Ernie Williams
Franklin, Tennessee

For the Defendant/Appellant-
Cross/Appellee:

Robert H. Plummer, Jr.
Franklin, Tennessee

**AFFIRMED AND REMANDED**

HOLLY KIRBY LILLARD, J.

CONCURS:

BEN H. CANTRELL, J.

WILLIAM C. KOCH, JR., J.

_____**OPINION**

This is a child custody case. The trial court awarded custody of the three minor children to the father, and ordered the mother to pay child support. The mother appeals. We affirm and remand.

Plaintiff/Appellee, Bruce Freeman Grover ("Husband"), and Defendant/Appellant, Sharon Diane Grover ("Wife"), were married in 1979. Three children were born during the eighteen and one-half year marriage. At the time of trial, Cassie was fourteen, Christina ("Chrissy") was eleven, and Chase was nine. On July 23, 1997, Husband filed for divorce from Wife, citing irreconcilable differences and inappropriate marital conduct. Wife filed a counter-complaint for divorce. Both parties sought custody of the three minor children.

For several years preceding their separation, the parties had lived with the children in a four bedroom trailer located on land owned by Wife's father, Tom Locke ("Locke"). Prior to the parties' separation, Wife was the primary caretaker of the children. Wife moved out of the trailer in June 1997. Since then, the children have continued to reside in the trailer with Husband, and he has been the primary caretaker of the children. The trailer is within walking distance of the Locke residence. The children spend considerable time in the home or in the care of Locke and his wife, Wife's stepmother, as they have since they began residing in the trailer. Locke and his wife help Husband with the care of the children, before work and at other times when needed.

After Wife moved out of the marital home, Husband obtained a temporary restraining order "restraining and prohibiting [Wife] from removing and/or attempting to remove the minor children from the physical possession of [Husband] and/or [Wife's] father, pending further proceedings in this cause." Locke, Wife's father, also obtained a restraining order against Wife, which prevented her from coming on to his property.

Both parties have a checkered past. Approximately nine years ago, both Husband and Wife were convicted of the sale of cocaine. As a result, they were both placed on lengthy probation. Husband has never been convicted of violating his probation, but admits that warrants were served on him on a few occasions. Wife has one probation violation for a positive drug test for marijuana.

On August 15, 1997, the parties entered into an agreed order providing that Husband and Locke would share joint custody of the children until a later hearing. At the time of the agreed order, both parties had tested positive on a drug screen. Joint custody with Wife's father was agreed on to protect the children in the event that both parties were incarcerated. In a second agreed order dated December 8, 1997, the parties agreed that Wife would pay $145 per week in child support pending

the final hearing set for January 12, 1998. Wife paid these amounts until January 12, 1998, but failed to pay child support from January 12, 1998 to February 11, 1998 when the hearing was rescheduled.

Husband is currently employed as an assistant grocery store manager. His shift starts anytime from 2:00 a.m. to 6:00 a.m., which prevents him from caring for the children before school. He testified that since he started working those hours, he has received help in getting the children ready for school from his mother or his in-laws. He is usually off work by 3:00 p.m.

Husband testified at trial that his oldest daughter, Cassie, is estranged from her mother and chooses not to visit with her mother. He stated that the parties' second oldest daughter, Chrissy, does not wish to visit with her mother but feels compelled to because she believes that she would be arrested if she did not. Husband testified about his everyday involvement in the children's lives, such as driving them to after-school activities, coaching his son's sports teams, and eating lunch at school with each child at least once every week. He enrolled the children in counseling for divorced children at their respective schools. Husband claimed that Wife was not helping him with any of the children's expenses, and that she was not paying child support.

Husband admitted that, about two years before the divorce, he moved out of the marital home and lived with another woman for several months. Husband claimed that he gave Wife money for the children's expenses during the separation, which Wife disputes. During this time, Husband claimed that he learned that Wife was also having an affair.

Wife is currently employed at Kroger as a head clerk. She currently lives in a house with her boyfriend and another male roommate. Wife testified that she moved out of the marital residence after she was assaulted by Husband, resulting in a bruised lumbar and an injury to her elbow. She alleged that, when she came home from work one day, Husband awoke and became angry with her about the keys to his truck. He then pulled her by her ankles off the couch where she had been sitting and threw her purse at her. This assault was not prosecuted. When she returned the following day to pick up the children, she found that her father had obtained a restraining order prohibiting her from coming onto his property. Wife testified that when Husband moved out of the marital home for several months, she had just been diagnosed with Crohn's disease, a disease affecting the intestines. She denied that Husband made payments to her for the children's care during that time. She testified that she did not begin seeing the man with whom she currently resides until Husband moved out of the marital residence. She stated that she stopped this extramarital relationship when

2

Husband returned to the marital home and that it did not resume until June 1997 when she asked Husband for a divorce.

Wife testified that, prior to the parties' final separation, she was the primary caretaker of the children, and that she prepared them for school and fixed their lunches. She stated that, since the separation, she has been involved in the children's activities and has attended a dance, football and baseball games, and has visited Chase's school and counselor.

Wife also testified, that after she acquired a lawyer to set up visitation, she has never missed a visitation with the children. On several occasions Chase, by choice, stayed longer with Wife than the usual weekend visitation schedule allowed. Wife explained that Chrissy may have developed the idea that she would be arrested if she did not visit with her mother from an occasion on which Chrissy was at her grandfather's house and refused to go with her mother for visitation. Wife admitted that she told her father, in Chrissy's presence, that the court had ordered visitation for her and that she could call the police if necessary, but chose not to do so and left without Chrissy. Wife acknowledged that all of the children would have to change schools if custody were awarded to her. Wife believes that the two younger children should live with her despite one of the children's desires not to change schools. As for the fourteen year old, Cassie, Wife acknowledges that she can choose her residence, but asserts that it is in Cassie's best interest to live with Wife because of Cassie's lack of discipline or a curfew while with Husband. She asserts that the children should be split up if Cassie refuses to live with her.

Wife testified that, contrary to Husband's testimony, she paid $800 towards medical expenses not covered by insurance and contributed towards Chrissy's dance classes and recital costumes, Chase's football expenses, and Chase's school lunches.

Wife also testified that, when both parties were convicted of the sale of cocaine, Husband told her that he was diagnosed with a cocaine addiction and a sexual addiction. She asserted that although he was treated for the cocaine addiction, he never received any treatment for the sexual addiction. Husband disputed any type of sexual addiction or that he ever received such a diagnosis.

Wife's father, Thomas Locke, testified about his extensive involvement in the children's lives. He stated that he had custody of all three children for two years while the parties were dealing with their cocaine convictions. He explained that he built a pool for his grandchildren and his wife, that the children would often spend the night with him and his wife, and that he saw the children

3

every day playing in the yard. In his opinion, the children should be with their father.

Husband's mother, Eloise Cummings Blazy, also testified at trial. She indicated that the children are happy and settled in their current schools and should remain with their father. She stated that Cassie does not wish to visit with her mother and that Chrissy feels forced to visit, but that Chase wants visitation with his mother. She also testified that the children have a good relationship with Wife's father, Locke.

Wife presented two witnesses, Elsie Pratt, Thomas Locke's sister and Wife's aunt, and Toni Packard, a friend of Wife, who testified that the children would be better off in their mother's custody. In addition, Wife's mother, Irene Locke, testified that Wife is a good mother and is supportive of the children's school activities. She asserted that Wife was the children's primary caretaker during the marriage and denied that Husband has a loving relationship with the children, stating that she has not recently seen him show them any affection.

The two oldest children, Cassie and Chrissy, were interviewed in chambers by the trial judge and the attorneys. Cassie stated that she would rather live with her father. She said that she does not get along with her mother and that when she visits her mother, her mother has parties and drinks. In addition, she said that there was not sufficient bedroom space at her mother's house for the children with the male roommate residing there. Cassie stated that the children usually prepared their own lunches and breakfast because of her dad's early hours. Chrissy stated that she liked living on her grandfather's farm and wanted to stay there.

At the conclusion of the proceedings, the trial court issued an oral ruling granting custody to Husband. In the trial court's written order, it stated that it had considered the statutory factors listed in Tennessee Code Annotated § 36-6-106. It found that the most important factor in this case was "the importance of the continuity in all of the children's lives," including their continued residence on Locke's farm and enrollment in their current schools. The trial court found that it would not be in the children's best interest to split them up. The trial court discussed the conference with the two older children, in which they told the trial judge that they wished to remain in their current home with their father and stay in their current schools. The trial court also indicated that a significant consideration in granting custody to Husband was the stability provided by Mr. and Mrs. Locke. Husband was ordered to arrange for adult supervision for the morning hours before the children depart for school. Wife was granted standard visitation of every other weekend, summer

4

break, and holidays; however, the trial court stated that any child of fourteen who did not wish to visit with Wife would not be forced to do so. Wife was ordered to pay $600 per month in child support.

Wife now appeals the trial court's order awarding custody to Husband. On appeal, Wife argues that the trial court failed to consider the comparative fitness of the parties. Wife also argues that the trial court erroneously credited Husband's testimony and failed to consider that he had been consistently untruthful to the court. Husband seeks attorney's fees for this appeal.

The trial court has wide discretion in child custody matters. *See Herrera v. Herrera*, 944 S.W.2d 379, 385 (Tenn. App. 1996). "In cases involving child custody, the decision of the Trial Judge who saw and heard the witnesses, is to be given great, if not controlling effect, and we will interfere only where we find a palpable abuse of discretion, or a judgment against the great weight of the evidence." *Id.* at 386 (quoting *Cecil v. State ex rel. Cecil*, 192 Tenn. 74, 77, 237 S.W.2d 558, 559 (1951)).

"[T]he welfare and best interests of a child are the paramount considerations and the rights, desires, and interests of the parents become secondary." *Whitaker v. Whitaker*, 957 S.W.2d 834, 838 (Tenn. App. 1997) (citing *Neely v. Neely*, 737 S.W.2d 539, 542 (Tenn. App. 1987)). The determination of the child's best interest must turn on the particular facts of each case. *See Taylor v. Taylor*, 849 S.W.2d 319, 326 (Tenn. 1993); *In re Parsons*, 914 S.W.2d 889, 893 (Tenn. App. 1995). In *Bah v. Bah*, the court adopted the "comparative fitness" approach to child custody decisions: "There are literally thousands of things that must be taken into consideration in the lives of young children and these factors must be reviewed on a comparative approach." 668 S.W.2d 663, 666 (Tenn. App. 1983) (citation omitted). The trial court must also consider factors set forth in Tennessee Code Annotated § 36-6-106.[1]

---

[1] Tennessee Code Annotated § 36-6-106 provides the following factors to be considered in child custody cases:

(1) The love, affection and emotional ties existing between the parents and child;
(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment . . . ;
(4) The stability of the family unit of the parents;
(5) The mental and physical health of the parents;
(6) The home, school and community record of the child;

On appeal, Wife argues that the trial court failed to compare the fitness of both parties. Wife also argues that the trial court placed undue emphasis on Wife's decision to move out of the marital home without the children. Wife reiterates that she had to leave the marital home because Husband assaulted her. She also contends that the trial court failed to consider that Wife's father, from whom the parties rented their marital home, had a restraining order issued against her. Wife emphasizes that she was the primary caregiver until the parties' final separation. Husband argues that the trial court appropriately placed the children with him, based on findings that a move would create "additional harm" to the children, that the children should not be split up, and that the older children preferred to remain with Husband.

The trial court in this case stated expressly that it had considered the statutory factors listed in Tennessee Code Annotated § 36-6-106 and had compared the fitness of the two parents. The record supports this statement; the trial court's oral ruling includes a discussion of several of the listed factors.

The trial court discussed the importance of continuity in the children's lives. It is undisputed that Wife was the primary caretaker prior to the parties' final separation. While courts in Tennessee are not required to award custody to the parent who has been the primary caretaker, it remains an important consideration. *See Taylor v. Taylor*, 849 S.W.2d 319, 327-28 (Tenn. 1993); *Contreras v. Ward*, 831 S.W.2d 288, 290 (Tenn. App. 1991); *see also Bailey v. Bailey*, No. 02A01-9609-CH-00226, 1997 Tenn. App. LEXIS 268 (Tenn. App. Apr. 22, 1997) (considering parent's status as primary caretaker in custody decision); *Hooke v. Thompson*, No. 01A01-9504-CV-00180, 1995 Tenn. App. LEXIS 645 (Tenn. App. Oct. 4, 1995) (same). However, under the circumstances in a given case, a court may determine that the parent who has been the primary caregiver "may not

(7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;
(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person . . . ;
(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and
(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106 (Supp. 1998).

necessarily be comparatively more fit than the other parent to have permanent custody of the child."
***Gaskill v. Gaskill***, 936 S.W.2d 626, 630-31 (Tenn. App. 1996).

In this case, the issue of continuity in the children's lives is complex. While Wife was the primary caretaker, it is undisputed that both parties have had significant problems with substance abuse. During this period of instability, the fact that the family lived on Locke's property, and the intervention of Locke and his wife in caring for the children, provided an anchor for the children. Moreover, it is undisputed that awarding custody to Mother would result in the children having to leave the marital home and change schools. Under these circumstances, it was reasonable for the trial court to conclude that, while Wife had been the primary caretaker, awarding custody to her would "cause further unstability in their lives and . . . additional harm."

The trial court also expressed appropriate concern about Wife's living arrangements; Wife lives in a house with her boyfriend and another man, and the children indicated that there were insufficient bedrooms for them. The trial court stated, "I have some concern -- and, again, this goes back to awarding custody to father in the first place: The environment right now that you're living in I do not believe is the most conducive environment for these children to live in in a custodial situation . . . ." Wife's living arrangements were compared to Husband's, living in the marital home on Locke's property.

Wife notes that the evidence established that Husband frequently left for work in the early morning and that the children got themselves ready for school without adult supervision. Indeed, this is a legitimate cause for concern, and the trial court in its order required Husband to provide adult supervision for the children before school. Generally, the evidence indicated that the children had been well cared for in Husband's custody since the parties' final separation.

The record indicates that the trial court considered the preference expressed by the two older children that they remain in their father's custody. Indeed, it was clear from the record that it is unlikely that Cassie would live with her mother even if ordered to do so. Consequently, the trial court appropriately considered whether splitting the children, as would result from an award to Wife, was in their best interest. Tennessee courts have consistently emphasized the importance of raising siblings in the same household following divorce, "It is generally not a good idea to separate minor children by a custody order . . . . Generally speaking, siblings, following a divorce, have a right to spend their minority together in the absence of proof of potential harm to one of them or other

7

extenuating circumstances." ***Gracey v. Gracey***, No. 03A01-9511-CV-00419, 1996 Tenn. App. LEXIS 240, at *7 (1996) (citations omitted). The record supports the trial court's finding that separating the children would not be in their best interest.

Wife argues on appeal that Husband was consistently untruthful to the trial court, and that this mitigates in favor of an award of custody to her. She points out that Husband indicated that he got the children up on school mornings and got them ready for school, but that the children's later talk with the trial judge showed that he often left for work early and the children got themselves ready for school. Without question, "[a] parent's honesty reflects on his or her fitness to be a good custodian." ***Gaskill v. Gaskill***, 936 S.W.2d 626, 634 (Tenn. App. 1996).

Other issues involve an assessment of the parties' credibility. Wife asserts that she was forced to leave the marital home because Husband assaulted her. Both parties dispute various monetary issues regarding payment of child support and the children's expenses.

When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. ***See McCaleb v. Saturn Corp.***, 910 S.W.2d 412, 415 (Tenn. 1995); ***Whitaker v. Whitaker***, 957 S.W.2d 834, 837 (Tenn. App. 1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. ***Whitaker***, 957 S.W.2d at 837; ***In re Estate of Walton v. Young***, 950 S.W.2d 956, 959 (Tenn. 1997). This is especially true in custody matters. ***See Gaskill v. Gaskill***, 936 S.W.2d 626, 631 (Tenn. App. 1996).

In this case, it is clear that both parents have had substantial difficulties and have significant drawbacks. However, we recognize, "[P]arents, whether married or not, are human beings, each with his or her own virtues and vices. . . . Therefore, the courts should not measure either parent against the standard of perfection." ***Gaskill***, 936 S.W.2d at 630. Overall, the record supports the trial court's award of custody to Husband. The decision of the trial court is affirmed.

Husband argues that he is entitled to attorney's fees on appeal. Tennessee Code Annotated § 36-5-103(c) governs awards of attorney's fees in proceedings relating to child support and child custody:

The plaintiff spouse may recover from the defendant spouse, and the spouse or

other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tenn. Code Ann. § 36-5-103(c) (Supp. 1998). In this case, we find that Husband is entitled to attorney's fees for this appeal.

In sum, we find that the trial court adequately compared the fitness of the parties and affirm the trial court's decision to award custody to Husband. Attorney's fees to Husband for this appeal are granted. The cause is remanded to the trial court for an award of attorney's fees on appeal.

The decision of the trial court is affirmed and the cause remanded for further proceedings consistent with this Opinion. Costs are taxed to Appellant, for which execution may issue if necessary.


_____
_____HOLLY KIRBY LILLARD, J.

**CONCUR:**


_____
**BEN H. CANTRELL, J.**


_____
**WILLIAM C. KOCH, JR., J.**